UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EUN JUNG, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE,<br><br>Defendant. | Case No. C22-5127RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendant's "Motion for Summary Judgment Dismissing Plaintiff's Claims" (Dkt. # 22). The Court, having reviewed the submissions of the parties[1] and the remainder of the record, grants defendant's motion for summary judgment for the reasons stated herein.

**I.  Background**

**A.  Plaintiff's Complaint**

Plaintiff Eun Jung filed this lawsuit on February 28, 2022, against her auto insurer, defendant Liberty Mutual. Dkt. # 1. Plaintiff alleged a breach of contract claim (specifically, breach of good faith and fair dealing) as well as a claim under RCW § 48.30.015, Washington's

---

[1] The Court notes that plaintiff filed a response to the motion (Dkt. # 24) in line with the briefing schedule set out in LCR 7(d)(3). Plaintiff then filed a second "response" well after the deadline contemplated by LCR 7(d)(3). *See* Dkt. # 30. Because the second response was filed after the deadline for plaintiff's response had passed and appears to be substantively identical to her initial response, the Court considers only plaintiff's initial response in ruling on this motion.

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 1

Insurance Fair Conduct Act ("IFCA"). *Id.* at 3-4. The factual basis for plaintiff's claims arose from defendant's handling of three motor vehicle collisions plaintiff was involved in while Liberty Mutual was her insurer. *Id.* at 1. The three collisions occurred on February 1, 2014, August 8, 2014, and January 4, 2016, respectively. *Id.* In her complaint, plaintiff alleges that (1) with regard to the August 8th collision, Liberty Mutual failed to pay plaintiff's medical providers, causing the medical providers to seek a judgment against plaintiff and her parents; (2) defendant "granted Plaintiff only a maximum income continuation benefit of $35,000.00 from Plaintiff's PIP[2] coverage"; (3) plaintiff has yet to be compensated for medical costs relating to the collisions "to the full extent allowed by her policy"; (4) defendant permitted plaintiff's former attorney to "redirect and cash [a] $35,000 check out of Plaintiff's PIP coverage to the benefit of [the former attorney's] law firm under false claim of power of attorney"; and (5) with regard to the January 4th collision, defendant "falsely represented to Plaintiff that she was not permitted to open a new PIP claim because a claim was already open with respect to one of the prior collisions," falsely "informed Plaintiff . . . that in order to open a new claim, Plaintiff would need to convey and sign a hold harmless agreement on existing claims," and "falsely asserted that Plaintiff's claim was fraudulent." *Id.* at 1-2.

### B. Case Progress

Plaintiff has largely failed to prosecute her case since filing her complaint. On August 11, 2022, defendant filed a motion to "Compel Plaintiff's Initial Disclosures and Responses to Defendant's First Interrogatories and Requests for Production." Dkt. # 11. Plaintiff did not respond to the motion to compel and the Court granted the motion on October 31, 2022. Dkt. # 17. The Court ordered plaintiff to provide defendant with her initial disclosures required by Federal Rule of Civil Procedure 26(a) and respond to defendant's First Interrogatories and Requests for Production within 14 days of its Order. *Id.* Plaintiff failed to do so, and defendant moved for discovery sanctions. Dkt. # 18. On December 16, 2022, plaintiff filed a response to the motion for sanctions, citing plaintiff's serious health problems and plaintiff's attorney's

---

[2] "PIP" stands for "personal injury protection" coverage.

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 2

severe personal challenges requiring medical intervention as the reasons for plaintiff "falling out of compliance with [her] discovery obligations." Dkt. # 20. Plaintiff requested additional time to comply with discovery obligations and provide briefing in response to the motion for sanctions. *Id.* On February 2, 2023, the Court granted plaintiff an additional fourteen (14) days to respond to both the motion to compel and the motion for sanctions. Dkt. # 30. Plaintiff failed to file additional briefing in response to either motion. Thus, it appears that she continues to be out of compliance with her discovery obligations. *See, e.g.*, Dkt. # 23 (declaration of defendant's counsel, stating that they have yet to receive plaintiff's initial disclosures or discovery responses).

Additionally, on August 12, 2022, defendant moved for default against plaintiff on defendant's counterclaims. Dkt. # 13. Defendant noted that plaintiff's answer to its counterclaims was due on June 21, 2022. *Id.* at 3. The Clerk of Court entered default against plaintiff on defendant's counterclaims on August 22, 2022. Dkt. # 15.

### C. Defendant's Motion for Summary Judgment

On December 2, 2022, defendant filed a motion for summary judgment, arguing that because plaintiff had failed to make initial disclosures or respond to defendant's discovery requests, the Court must conclude that plaintiff lacks admissible evidence that at least raises a genuine issue of material fact as to each element of her claims. Dkt. # 22 at 1-2. Accordingly, defendant argues, her claims cannot withstand summary judgment and should be dismissed with prejudice. *Id.*

### D. Plaintiff's Response

In plaintiff's response to defendant's motion for summary judgment, she now alleges that (1) defendant sold plaintiff PIP coverage for the wrong state (Oregon instead of Washington), and failed to correct its error by backdating coverage to the January 2014 inception date of the policy; (2) defendant failed to conduct a reasonable investigation of plaintiff's claims regarding the August 8, 2014 collision before denying coverage; and (3) defendant "shut down Plaintiff's

right" to access PIP and UM/UIM[3] coverage that should have been available to her for injuries suffered in the January 4, 2016 collision after a third-party "apparently submitted fraudulent or altered medical records to Liberty Mutual as to his own injuries." Dkt. # 24 at 1-9.

As an initial matter, the Court notes that the factual allegations in plaintiff's response are markedly different from the factual allegations in her complaint, with only the third factual allegation raised in plaintiff's response appearing in her complaint. *Compare* Dkt. # 24 *with* Dkt. # 1. Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. Am.*, 534 U.S. 506, 512 (2002) (quotation marks omitted). Thus, where a plaintiff raises new factual allegations in a response to summary judgment and has not amended or sought to amend the complaint to include those allegations, the district court may decline to consider the new factual allegations on the basis that plaintiff failed to provide defendant with adequate notice of these new allegation. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *see also Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[Where] the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

However, because defendant has responded substantively to plaintiff's new factual allegations in its reply, *see* Dkt. # 25, the Court considers plaintiff's response on the merits.

## II.     Legal Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that establish the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c). Once the moving

---

[3] "UM" stands for "uninsured motorist." "UIM" stands for "underinsured motorist."

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 4

party satisfies its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The Court must "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). Although the Court must reserve genuine issues regarding credibility, the weight of the evidence, and legitimate inferences for the trier of fact, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also* Fed. R. Civ. P. 56(c) (explaining that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")

When parties opposing summary judgment motions submit conclusory, self-serving declarations not supported by anything else in the record, courts may, in appropriate instances, find that the self-serving declaration does not place a fact in genuine dispute. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *see also Potter v. City of Lacey*, 517 F. Supp. 3d 1152, 1159 (W.D. Wash. 2021) ("Conclusory, non-specific statements in affidavits are not sufficient, and 'missing facts' will not be 'presumed.'" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990))).

### III. Discussion

Plaintiff's IFCA and breach of conduct claims are premised on three alleged actions taken by defendant. *See* Dkt. # 24 at 1-9. Because the Court finds that plaintiff has failed to

designate "specific facts showing that there is a genuine issue for trial" on any of her claims, it grants defendant's motion for summary judgment.

### A. Addition of PIP Coverage to Insurance Policy

Plaintiff first alleges that "[f]ollowing the crash of February 2014, Plaintiff discovered that her mother was unable to have surgery because the policy that LM sold her contained a PIP coverage endorsement for Oregon rather than for Washington State, the result of an apparent error on the part of LM." Dkt. # 24 at 2. Plaintiff alleges that she contacted Liberty Mutual by phone about the error and was told her policy would be "updated to include the PIP coverage backdated to the original January 2014 inception date of the policy" but that instead, defendant "set an effective date of March 12th, 2014 for the corrected coverage." *Id.* at 2-3. The only evidentiary support plaintiff offers for these allegations is her own declaration, which simply states that "[a]ll of the facts attributed to me in this response are correct," Dkt. # 24 at 4, and a copy of her updated insurance policy, indicating that she added PIP coverage to her insurance plan in Washington, and that the effective date for the addition of PIP coverage was March 12, 2014, Dkt. # 24-3.

Defendant has entered into the record plaintiff's original policy statement, issued January 10, 2014, which does not include PIP coverage. Dkt. # 29-1. Defendant has also entered plaintiff's signed policy application form, which includes a form in which plaintiff elects to *reject* PIP coverage. Dkt. # 29-2. Defendant also submitted the "Policy Change 08" document, also relied upon by plaintiff, which indicates that plaintiff added PIP coverage to her insurance plan in Washington, and that the effective date for the addition of PIP coverage was March 12, 2014. Dkt. # 29-7. Nowhere in plaintiff's policy documents is there any mention of an Oregon endorsement. *See generally* Dkt. # 29; *see also* Dkt. # 29 at 2-3 (declaration of Jeremy Lavallee, a director of compliance analysis for Liberty Mutual, stating that "Liberty did not issue any Oregon endorsement for [plaintiff's] policy, which was issued to [plaintiff] at her address in Toutle Lake, Washington.").

Viewing the record as a whole, the Court finds that plaintiff has failed to designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The only

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 6

evidence plaintiff offers supporting her claim that defendant issued an Oregon endorsement with her policy are the allegations in her response, which she endorses through a catchall declaration. The Court finds that this "mere scintilla" of evidence is insufficient to create a genuine issue for trial and grants defendant's motion for summary judgment on this issue.

### B. Reasonable and Timely Investigation of August 8, 2014 Collision

Plaintiff next alleges that defendant failed to conduct a reasonable and timely investigation into her claims arising from the August 8, 2014 collision. Dkt. # 24 at 2. In making this claim, plaintiff relies on (1) a June 8, 2018 email from defendant's employee Tamara Budd, in which Ms. Budd questions whether plaintiff's claimed injuries were caused by the collision; (2) the fact that defendant subjected plaintiff to an independent medical examination ("IME") conducted by a chiropractor, who, plaintiff argues, was not qualified to opine about many of plaintiff's injuries; and (3) the fact that plaintiff then requested a second IME and a secondary review of her medical records, both of which plaintiff alleges were rejected by defendant. *Id.* at 3-4.

Plaintiff asserts that these actions violate the Washington Insurance Fair Conduct Act. Dkt. # 24 at 8. Under the IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW § 48.30.015(1). However, the "IFCA does not create an independent cause of action for regulatory violations." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn. 2d 669, 684 (2017). Thus, the insured must establish that their insurer has unreasonably denied (1) a claim for coverage or (2) payment of benefits. *Id.* This Court has previously explained that where "the insurer makes a reasonable payment based on the known facts or is making a good faith effort to appropriately value the loss, the fact that the insured did not immediately get all of the benefits to which it may ultimately be entitled does not establish an 'unreasonable denial of payment of benefits.'" *Morella v. Safeco Ins. Co. of Ill.*, No. C12-672-RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013).

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 7

Plaintiff also appears to allege that defendant's failure to investigate violated the Washington Consumer Protection Act ("CPA").[4] *See* Dkt. # 24 at 8 (citing RCW § 48.30.010 and WAC § 284-30-330). A Consumer Protection Act claim in the insurance context requires "(1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act." *Industrial Indem. Co. of the N.W., Inc. v. Kallevig*, 114 Wn. 2d 907, 920-21 (Wash. 1990). A CPA claim can be predicated on a violation of WAC § 284–30–330. *Id.* at 923 ("A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of the legislative declaration in RCW 19.86.170."). WAC § 284-30-330(3) prohibits "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." WAC § 284-30-330(4) prohibits "[r]efusing to pay claims without conducting a reasonable investigation."

Here, not only has defendant paid plaintiff benefits of $5,965.99 in medical payments coverage, $1,600 for essential services, and $35,000 for wage loss with regard to the August 8th collision, Dkt. # 26-9, but the record shows that plaintiff's claims of unreasonable investigation are not supported by the evidence. *See generally* Dkt. # 26. First, while defendant used a chiropractor to conduct an IME of plaintiff, it appears that defendant only based its coverage of plaintiff's chiropractic treatment and physical therapy care on his assessment. Dkt. # 26-10. Indeed, in the letter informing plaintiff of the IME's results, defendants note that they are separately "having the records related to the jaw and teeth reviewed to see if they are related to this accident." *Id.* at 1.

Second, while plaintiff claims that Ms. Budd's email "speculated without evidence," the email itself undermines that conclusion. *See* Dkt. # 24-4 at 2. In the email, Ms. Budd notes that "a review of the updated records . . . raised more questions" for her, including: (1) the fact that

---

[4] To the extent plaintiff is arguing that a violation of WAC § 284–30–330 can constitute an IFCA violation, the Washington Supreme Court has foreclosed such arguments, stating that "IFCA does not create an independent cause of action for regulatory violations." *Perez-Crisantos*, 187 Wn. 2d at 684.

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 8

the "ER record d[id] not mention anything about [plaintiff] hitting her head" and instead focused on a preexisting wound that was re-opened, raising the possibility that the ruptured eardrum might have been related to the preexisting injury (Ms. Budd notes that the medical records are unclear); (2) that the "Kaiser record" notes that plaintiff's temporomandibular joint syndrome ("TMJ") was "caused by her clenching and grinding her teeth." *Id.* It is also notable that defendant has submitted evidence demonstrating the questionable legitimacy of the medical records plaintiff submitted in support of this claim. *See* Dkt. # 25 at 3-5; Dkt. # 26 at 2-4; Dkt. # 28. Despite these concerns and the fact that plaintiff apparently never responded to certain records requests made by defendant, *see* Dkt. # 25 at 3-4; Dkt. # 26 at 4-5, defendant subsequently made an offer of $8,500 "new money" to resolve plaintiff's UIM claim but received no response. Dkt. # 26 at 5.

Finally, while plaintiff contends that she requested a second IME or review of her medical records, the only evidence plaintiff offers supporting this claim are the allegations in her response, which she endorses through a catchall declaration. *See* Dkt. # 24 at 4. Indeed, as mentioned above, the evidence submitted by defendant appears to show that it was *plaintiff* who failed to respond to requests from defendant seeking additional records. *See* Dkt. # 25 at 3-4; Dkt. # 26 at 4-5. The Court finds that plaintiff has failed to raise a genuine issue of material fact as to the reasonableness of defendant's investigation and grants defendant's motion for summary judgment on the issue.

**C. Coverage for January 4, 2016 Collision**

Plaintiff also alleges that defendant violated the IFCA by denying plaintiff access to her PIP coverage for her January 4, 2016 collision on the basis that "a live-in employee . . . submitted fraudulent or altered medical records to Liberty Mutual." Dkt. # 24 at 9. Specifically, plaintiff argues that "[t]o the extent [defendant] denied coverage to Plaintiffs based upon a third party's submission of questionable records – without evidence of said party having done so at Plaintiffs' behest – [defendant]'s denial of coverage was unreasonable." *Id.*

As an initial matter, the email cited by plaintiff as evidence for her claim does not appear to support her allegations. *Id.* (citing Dkt. # 24-2). The email subject line refers to "claim

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 9

030358027," the claim number assigned to the August 8, 2014 collision (not, as plaintiff claims, the January 4, 2016 collision), *see, e.g.*, Dkt. # 26-10, and the contents of the email thread show that it is focused on the August 8th collision. *See* Dkt. # 24-2. Additionally, the response plaintiff takes issue with: "The UIM rep, Meghan Nyhuis, appears to have waived the claims. UIM still pending. Files are closed," Dkt. # 24-2 at 1, represents defendant's "subrogation position on [the August 8th collision] claim," *id.* at 2, in response to plaintiff's former attorney's request, *see id.* at 47 ("PIP waived subrogation on the third party settlement with State Farm. Please confirm it is also waiving PIP subrogation of medical bills and lost wages benefits on the UM settlements of new money."). The exchange, which addresses the subrogation of claims relating to the August 8th collision, does not appear to support plaintiff's assertion that defendant denied her coverage based on fraudulent submissions of a third party.

Moreover, defendant has offered evidence demonstrating it paid a total of $6,109.43 under plaintiff's collision coverage and an additional $810 for a rental car, for total payments of $6,919.43 with regard to the January 4th collision. *See* Dkt. # 26-19. It has further offered evidence demonstrating that it issued a denial letter to plaintiff regarding her PIP claims for the January 4th collision on the basis that plaintiff (not a third-party) had submitted falsified records, citing the fraud provisions of her policy. *See* Dkt. # 26-20; Dkt. # 26-21; Dkt. # 26-22; Dkt. # 26-23; *see also* Dkt. # 27. As discussed above, to prevail on an IFCA claim the insured must establish that the insurer has unreasonably denied (1) a claim for coverage or (2) payment of benefits. *Perez-Crisantos*, 187 Wn. 2d at 684. Here, plaintiff has failed to put forth evidence demonstrating that there is a genuine issue of fact as to defendant's reasonableness in handling her claim. The Court accordingly grants defendant's motion for summary judgment on this issue.

### D. Breach of Contract

Finally, plaintiff alleges that defendant's IFCA-violating conduct also constitutes a breach of the duty of good faith and fair dealing. Dkt. # 24 at 9. Because the Court finds that plaintiff has failed to demonstrate a genuine issue of material fact as to her IFCA claims, it concludes that she has also failed to demonstrate that the breach of contract claims based on the

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 10

same allegation raise a genuine issue for trial. The Court accordingly grants defendant's motion for summary judgment on this issue.

### IV.  Conclusion

For all the foregoing reasons, defendant's motion for summary judgment (Dkt. # 22) is GRANTED. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

IT IS SO ORDERED.

DATED this 27th day of February, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT - 11